James Alva ROSS, Appellant

v.

STATE of Arkansas, Appellee.

No. CA CR 10–904.

Court of Appeals of Arkansas.

March 2, 2011.

E. Alvin Schay, Little Rock, for appellant.

Dustin McDaniel, Atty. Gen., Brad Newman, Asst. Atty. Gen., for appellee.

DOUG MARTIN, Judge.

A Clark County jury found appellant James Ross guilty of residential burglary, and he was sentenced as an habitual offender to twenty years' imprisonment. On appeal, appellant does not challenge the sufficiency of the evidence convicting him but raises three points for reversal: (1) the trial court erred in denying his request for

an instruction on the lesser-included offense of criminal trespass; (2) the trial court erred in denying his motion for a mistrial due to the prosecutor's questioning of the jurors during voir dire to consider the full range of punishment; and (3) the trial court erred in denying his request to be tried without restraints. We affirm.

The State charged appellant with aggravated residential burglary and aggravated assault, alleging that he and Francis Hargis entered the home of Amanda and Danny Wilson in the early morning hours of July 11, 2009, and caused serious physical injuries to Ms. Wilson in front of the Wilsons' minor children. The information reflects that appellant was charged as an habitual offender pursuant to Ark.Code Ann. § 5–4–501, having been convicted of more than one but less than four felonies. Further, the State sought an enhanced penalty pursuant to Ark.Code Ann. § 5–4–702 of not less than one and not greater than ten years because the offenses were committed in the presence of a child.

At trial, Amanda Wilson testified that on July 11, 2009, she was living in Arkadelphia with her husband and three children, ages five, four, and one. At approximately 3:45 a.m., Ms. Wilson was up putting her daughter back to bed. Mr. Wilson was also up getting a drink of water. The Wilsons heard a commotion outside their front door, which was locked with a deadbolt and chain. When Ms. Wilson flipped on the porch light, the door was kicked in, hitting her forehead as it flew open. Francis Hargis, a woman Ms. Wilson had known for approximately a year and referred to as "Dee," rushed in and began attacking Ms. Wilson by repeatedly hitting her on the head with a beer bottle. At one point, Ms. Wilson was on top of Hargis and was choking her when Hargis yelled to the man with whom Hargis had entered the home, "James, get her off of me." According-

ing to Ms. Wilson, the man, whom she later identified as appellant, grabbed her by the shoulder, yanked her up and off of Hargis, and threw her against a door facing where she struck her head. Hargis then jumped back on Ms. Wilson wielding a coffee cup, with which she hit Ms. Wilson in the face until the cup broke. Ms. Wilson testified that blood from her nose "went everywhere," and she heard appellant say to Hargis, "Let's go. I think the bitch is dead, let's get out of here." According to Ms. Wilson, the two perpetrators walked over her body and left the Wilsons' home. Ms. Wilson testified that her two older daughters were standing nearby, watching, screaming, and crying. Ms. Wilson testified at the time of trial that she has scars from the incident.

On cross-examination, Ms. Wilson denied that Hargis was upset with her for threatening to call Hargis's doctors to tell them to discontinue Hargis's prescription of methadone pills. Ms. Wilson stated that she did not know why Hargis came to her home that night. Ms. Wilson further testified that she had never seen appellant before the night at issue and that she did not see the knife with which appellant allegedly threatened her husband.

Mr. Wilson testified that, when he and his wife heard the commotion at the front door, appellant yelled, "Let me in." Mr. Wilson asked for the man's identity and heard, "It's James, mother fucker, let me in." Mr. Wilson informed the stranger that he did not know anyone by the name of James, but appellant repeated his demand. Mr. Wilson testified that the door suddenly flew open, hitting his wife on the head and knocking her backward. Mr. Wilson testified that he was looking around for something with which to defend himself when appellant rushed up to him and held a knife to his throat. In the background, he heard Hargis say to Ms.

Wilson, "I'm going to kill you, bitch." Mr. Wilson testified that he got a good look at the knife when appellant turned around to tell Hargis she may have killed Ms. Wilson.

On cross-examination, Mr. Wilson testified that he had known Hargis for approximately three months and admitted that, from time to time, he and Hargis shared pills. Mr. Wilson stated that he has a back injury for which he takes prescription pain medication.

Jim Pennington, a criminal investigator with the Clark County Sheriff's Office, testified that an arrest warrant was issued for appellant on July 13, 2009. Pennington went to appellant's home on several occasions but did not locate him. He stated that appellant was later apprehended on August 19, 2009, in Arizona. Pennington testified that authorities did not recover a knife.

Alex Ross, appellant's aunt, testified that appellant lived with her for one or two months before his arrest. She testified that she did not see a hunting knife such as that described by Mr. Wilson during the time appellant stayed with her and that she did not believe appellant had ever owned such a knife. Ms. Ross further testified that she did not know where appellant went when he left her home but that he mentioned visiting relatives. She stated that appellant has a half-brother who lives in Arizona.

The jury found appellant not guilty of aggravated residential burglary and aggravated assault; however, the jury found him guilty of residential burglary and sentenced him to serve twenty years' imprisonment and imposed a fine of $15,000.

A person commits residential burglary if he enters or remains unlawfully in a residential occupiable structure of another person with the purpose of committing any offense punishable by imprisonment. Ark. Code Ann. § 5–39–201(a)(1) (Repl.2006). Residential burglary is a Class B felony. Ark.Code Ann. § 5–39–201(a)(2) (Repl. 2006).

On appeal, appellant argues that the trial court erred in not giving a jury instruction on criminal trespass as a lesser-included offense of residential burglary [1] Specifically, appellant maintains that there was no evidence that he was the person who broke down the Wilsons' door. Appellant notes that Ms. Wilson testified that Hargis was the first person who entered her house and that Ms. Wilson did not know who broke the door. Appellant also asserts that Mr. Wilson's testimony is suspect and that Ms. Wilson testified that she did not see a knife held to her husband's throat.

A person commits criminal trespass if he purposely enters or remains unlawfully in the premises of another person. Ark.Code Ann. § 5–39–203(a)(2) (Repl.2006). Our supreme court has held that criminal trespass meets all of the requirements of being a lesser-included offense of burglary. *Grays v. State*, 264 Ark. 564, 572 S.W.2d 847 (1978). An instruction on a lesser-included offense is appropriate when it is supported by even the slightest evidence. *Grillot v. State*, 353 Ark. 294, 107 S.W.3d 136 (2003). Once an offense is determined to be a lesser-included offense, the trial court is obligated to instruct the jury on that offense only if there is a rational basis for a verdict acquitting the defendant of the offense

1. Although the State argues that appellant's challenge to the trial court's failure to give a jury instruction on the lesser-included offense of criminal trespass is not preserved for appellate review because appellant failed to include the proffered instructions in the record on appeal, appellant supplemented the record with the proffered instructions.

charged and convicting him of the included offense. *Williams v. State*, 363 Ark. 395, 214 S.W.3d 829 (2005). Where there is no evidence tending to disprove one of the elements of the larger offense, the trial court is not required to give an instruction on a lesser-included offense. *Stultz v. State*, 20 Ark.App. 90, 724 S.W.2d 189 (1987). A trial court's ruling on whether to submit a jury instruction will not be reversed absent an abuse of discretion. *Grillot, supra.*

■ The trial court did not abuse its discretion in denying appellant's request to instruct the jury on criminal trespass because there was no rational basis for a verdict acquitting appellant of residential burglary and convicting him of criminal trespass. Although appellant attempts to disclaim responsibility because he did not take part in every act that went toward the crime as a whole, the law on accomplice liability provides that, when a person assists another in the commission of a crime, each is an accomplice and is liable for the conduct of both. Ark.Code Ann. § 5-2-402(a)(2) (Repl.2006); *Cook v. State*, 350 Ark. 398, 86 S.W.3d 916 (2002). The jury could have concluded that appellant acted in a manner suggestive of joint participation with Hargis in forcefully entering the Wilsons' home at night and perpetrating a violent attack on Ms. Wilson.

Ms. Wilson specifically testified that appellant threw her against a door facing, permitting Hargis to regain control over Ms. Wilson and resume beating her. Mr. Wilson's testimony establishes that appellant kept him from coming to his wife's aid by holding a large knife against Mr. Wilson's throat. Ms. Wilson testified that she was struck on the forehead when the door burst open; she was hit repeatedly with a beer bottle; and she was beaten in the face with a coffee cup until the cup broke. There was also testimony that Hargis threatened to kill Ms. Wilson. There was blood at the scene of the crime; Ms. Wilson went to the emergency room for treatment; and Ms. Wilson has scars from the injuries. Ample evidence exists from which the jury could find that appellant acted with the purpose of committing an offense punishable by imprisonment. To the extent appellant argues that the victims' testimony cannot be believed, we note that the credibility of witnesses is an issue for the jury to determine. *Morgan v. State*, 2009 Ark. 257, 308 S.W.3d 147. The trier of fact is free to believe all or part of any witness's testimony and may resolve questions of conflicting testimony and inconsistent evidence. *Id.* Based on the victims' testimony, there was no rational basis for a verdict acquitting appellant of the greater offense and convicting him of the lesser one; therefore, the trial court did not abuse its discretion in refusing to give a jury instruction on the lesser-included offense of criminal trespass.

■ Next, appellant argues that the trial court erred in denying his motion for a mistrial when the prosecutor asked the jury panel members during voir dire if they could consider the full range of punishment for the two charges brought against him, which the prosecutor related to the panel was a minimum of ten years and a maximum of life in prison plus an additional twenty-two years. A mistrial is a drastic remedy, to be employed only when an error is so prejudicial that justice cannot be served by continuing the trial. *Peters v. State*, 357 Ark. 297, 166 S.W.3d 34 (2004). Granting or denying a mistrial is within the sound discretion of the trial court, whose decision will not be overturned absent a showing of abuse or manifest prejudice to the appellant. *Id.* The general rule is that a defendant who has received a sentence short of the maximum cannot show prejudice from the sentence

itself. *Buckley v. State*, 349 Ark. 53, 76 S.W.3d 825 (2002). Appellant was sentenced to twenty years' imprisonment, a term far shorter than the potential maximum sentence for an habitual offender. Thus, appellant cannot show that he was prejudiced by the prosecutor's remarks. The trial court did not abuse its discretion in denying appellant's motion for a mistrial.

Finally, appellant argues that the trial court erred in denying his request to have his leg restraints removed for trial because there was no evidence that he tried to escape or caused any disruptions while in custody. Arkansas Rule of Criminal Procedure 33.4 provides:

> Defendants and witnesses shall not be subjected to physical restraint while in court unless the trial judge has found such restraint reasonably necessary to maintain order. If the trial judge orders such restraint, he shall enter into the record of the case the reasons therefor. Whenever physical restraint of a defendant or witness occurs in the presence of jurors trying the case, the judge shall upon request of the defendant or his attorney instruct the jury that such restraint is not to be considered in assessing the proof and determining guilt.

It is not prejudicial per se when the defendant is brought into a courtroom handcuffed or leg-cuffed. *Townsend v. State*, 308 Ark. 266, 824 S.W.2d 821 (1992). The trial court has discretion to use physical restraints on a defendant for security purposes and to maintain order in the courtroom. *Woods v. State*, 40 Ark.App. 204, 846 S.W.2d 186 (1993). Moreover, the trial judge is in a better position to evaluate the potential security risks involved. *Id.*

In response to defense counsel's assertion that appellant's restraints were unnecessary, the trial judge ruled, "Denied because he left the jurisdiction. And based on the nature of the charge I'm going to go ahead and leave the leg irons, but do everything I can to limit the jury's viewing of that situation." Indeed, the evidence showed that appellant fled the jurisdiction and was located in Arizona over a month after the incident. Also, the charges against appellant were of a violent nature. Appellant asserts that he was prejudiced by the trial court's ruling because "wearing leg chains could convey no other impression on jurors than that the defendant was a dangerous person." We will not presume prejudice when there is nothing in the record to indicate what impression may have been made on the jurors and when appellant has offered no proof of prejudice. *Hill v. State*, 285 Ark. 77, 685 S.W.2d 495 (1985). Appellant has not shown any prejudice and did not request a limiting instruction. The trial court did not abuse its discretion in ordering the use of physical restraints on appellant.

Affirmed.

VAUGHT, C.J., and GLADWIN, J., agree.